# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **MICHAEL HEILBRUN**, | Case No. 3:14-cv-1706-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **HEATHER VILLANUEVA, et al.**, | |
| Defendants. | |

Michael E. Heilbrun, Two Rivers Correctional Institution, 82911 Beach Access Road, Umatilla, OR 97882, *pro se*.

Ellen F. Rosenblum, Attorney General, and Vanessa A. Nordyke, Assistant Attorney General, OREGON DEPARTMENT OF JUSTICE, 1162 Court Street NE, Salem, OR 97301. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiff Michael Heilbrun brings this prisoner civil rights lawsuit *pro se* against various staff members at Two Rivers Correctional Institution ("TRCI") in Umatilla, Oregon. Plaintiff and Defendants have cross-moved for summary judgment. For the reasons that follow, Defendants' motions are granted in part, and Plaintiff's motions are denied.

**STANDARDS**

**A. Summary Judgment**

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

When parties file cross-motions for summary judgment, the court "evaluate[s] each motion separately, giving the non-moving party in each instance the benefit of all reasonable inferences." *A.C.L.U. of Nev. v. City of Las Vegas*, 466 F.3d 784, 790-91 (9th Cir. 2006) (quotation marks and citation omitted); *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 674 (9th Cir. 2010) ("Cross-motions for summary judgment are evaluated separately under [the] same standard."). In evaluating the motions, "the court must consider each party's evidence, regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving

party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). Thereafter, the

non-moving party bears the burden of designating "specific facts demonstrating the existence of

genuine issues for trial." *Id.* "This burden is not a light one." *Id.* The Supreme Court has directed

that in such a situation, the non-moving party must do more than raise a "metaphysical doubt" as

to the material facts at issue. *Matsushita*, 475 U.S. at 586.

## B. *Pro Se* Filings

A court must liberally construe the filings of a pro se plaintiff and afford the plaintiff the

benefit of any reasonable doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). "'Unless it is

absolutely clear that no amendment can cure the defect, . . . a pro se litigant is entitled to notice

of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action.'"

*Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848, 854 (9th Cir. 2016) (alteration in original)

(quoting *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam)). Under Federal

Rule of Civil Procedure 8(a)(2), however, every complaint must contain "a short and plain

statement of the claim showing that the pleader is entitled to relief." This standard "does not

require 'detailed factual allegations,'" but does demand "more than an unadorned, the defendant-

unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), (quoting *Bell

Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and

conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

(quoting *Twombly*, 550 U.S. at 555).

## BACKGROUND

Plaintiff has been an inmate at TRCI since September 3, 2014. TRCI is operated by the

Oregon Department of Corrections ("ODOC"). ODOC initially admitted Plaintiff to its custody

at the Coffee Creek Intake Center ("CCIC") on July 14, 2014. In the months before Plaintiff

entered CCIC, he had been an inmate at the Washington County Jail. Plaintiff was also previously incarcerated between September 30, 2010, and January 17, 2012.

Plaintiff alleges that he injured his spine at the Washington County Jail in March 2014 and was prescribed narcotic pain medication, a walker, and a wheelchair.[1] When Plaintiff entered ODOC custody at CCIC in July 2014, Plaintiff alleges, medical staff reduced his dosage of narcotic pain medication. On September 3, 2014, ODOC transferred Plaintiff to TRCI, and Defendant Gruenwald allegedly immediately deprived Plaintiff of all of his pain medication. In September 2014, TRCI medical staff allegedly returned Plaintiff to a lower dose of narcotic pain medication and then removed him from that dose.

Plaintiff also alleges that ODOC housed him in an active gang unit at TRCI. Plaintiff alleges that on September 8, 2014, a gang member attacked Plaintiff. As a result, ODOC transferred Plaintiff to the disciplinary segregation unit (DSU) and housed him there from September 8 until October 2, 2014. While in the DSU, Plaintiff alleges, staff members deprived him of the use of his walker and wheelchair. Without these mobility aids, Plaintiff alleges, he could not attend a disciplinary hearing relating to the September 8th altercation and present his case that he acted only in self-defense. Plaintiff also alleges that his lack of mobility aids in the DSU caused him to suffer various indignities in his inaccessible cell.

## DISCUSSION

Defendants move for summary judgment against all claims.[2] First, Defendants argue that Claims 1-3, 5, and 7-11 should be dismissed without prejudice because Plaintiff has failed to

---

[1] Because the Court dismisses most of Plaintiff's claims without prejudice for failure to exhaust the available administrative remedies, the Court summarizes Plaintiff's allegations in the Second Amended Complaint in order to provide context for Defendants' exhaustion arguments.

[2] The Second Amended Complaint (ECF 94) (the "SAC") divides Plaintiff's claims into different sections and subsections, but does not number them. Many of these claims are

exhaust available administrative remedies before bringing these claims. Second, Defendants argue that there are no genuine disputes of material fact and that they are entitled to judgment as a matter of law against Claims 4, 6, and 12-14.[3]

Plaintiff cross-moves for summary judgment on all claims. Because the Court finds that Plaintiff has failed to exhaust available administrative remedies on Claims 1-3, 5, and 7-11 and that these claims are largely duplicative of Claims 4, 6, 12, and 13, the Court dismisses Claims 1-13 without prejudice for failure to exhaust. To the extent that Plaintiff Claims 4, 6, 12, and 13 are not duplicative of Plaintiff's unexhausted claims, the Court grants summary judgment to Defendants against these claims. The Court also dismisses Claim 14 for the reasons discussed below.[4] This disposes of all claims asserted by Plaintiff.

## A. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e, provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

*Id.* § 1997e(a). The PLRA's exhaustion doctrine requires "prisoner plaintiffs [to] pursue a remedy through a prison grievance process as long as *some* action can be ordered in response to

---

duplicative of each other. For clarity, the Court has assigned numbers to Plaintiff's claims and identifies them by reference to page and line numbers in the SAC.

[3] Defendants also originally argued that Defendant ODOC should be dismissed because it is entitled to sovereign immunity under the Eleventh Amendment. The Court has since granted Plaintiff's motion to voluntarily dismiss ODOC. Accordingly, ODOC's motion is moot.

[4] On May 30, 2017, Plaintiff filed a "Response in Opposition to Summary Judgment and Cross Move for Summary Judgment." This filing contains additional arguments in opposition to Defendants' motions for partial summary judgment and in support of Plaintiff's cross-motions for partial summary judgment. The Court construes this filing as an additional response or reply to the pending motions. The Court considers the filing and accompanying declaration in this Opinion and Order.

the complaint." *Brown v. Valoff*, 422 F.3d 926, 934 (9th Cir. 2005). The prisoner must have

exhausted all of his available remedies before filing suit. *McKinney v. Carey*, 311 F.3d 1198,

1200-01 (9th Cir. 2002). A failure to exhaust, however, may be excused "when circumstances

render administrative remedies 'effectively unavailable.'" *Sapp v. Kimbrell*, 623 F.3d 813, 822

(9th Cir. 2010) (quoting *Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010)). A prisoner's

failure to exhaust available administrative remedies is an affirmative defense that the defendant

must establish. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014). "[A] defendant is entitled to

summary judgment under Rule 56" when "undisputed evidence viewed in the light most

favorable to the prisoner shows a failure to exhaust." *Id.*

### 1. ODOC's Inmate Grievance Process

ODOC's three-level grievance process for inmates' complaints is contained in

Chapter 291, Division 109 of the Oregon Administrative Rules ("OARs"). At the first level, "[i]f

an inmate is unable to resolve an issue through informal communications, the department

encourages the inmate to seek resolution of the issue by submitting a written grievance using the

department's approved inmate grievance form (CD 117) . . . ." OAR 291-109-0140(l)(a). "An

inmate may file a single grievance concerning" the following matters, which include:

"misapplication of any administrative directive or operational procedure;" the "lack of an

administrative directive or operational procedure;" any "unprofessional behavior or action which

may be directed toward an inmate by an employee, contractor, or volunteer of [ODOC] or the

Oregon Corrections Enterprises;" any "oversight or error affecting an inmate;" the "loss or

destruction of [personal] property;" and other matters. OAR 291-109-0140(2)(a)-(d), (f). After an

inmate submits a grievance, a grievance coordinator obtains a response from the "appropriate

staff or, if deemed more suitable, the appropriate manager." OAR 291-109-0160(1)(b).

At the second level of the grievance process, "[a]n inmate may appeal the initial grievance response" to the "functional unit manager." OAR 291-109-0170(1)(a), (d). The third level is an appeal of the functional unit manager's decision to the Assistant Director or his designee. OAR 291-109-0170(2). "The Assistant Director's or designee's decision on an inmate's grievance appeal is final, and is not subject to further review." OAR 291-109-0170(2)(f). Thus, a prisoner exhausts the available administrative remedies when he obtains the decision of the Assistant Director or a designee.

### 2. Plaintiff's Failure to Exhaust Administrative Remedies

Plaintiff does not argue that he completed ODOC's grievance process for any claims. To the extent that Plaintiff's filings are ambiguous and mindful of the duty liberally to construe pro se filings, the Court finds that whether or not Plaintiff concedes this point, Plaintiff has not exhausted his administrative remedies on Claims 1-3, 5, and 7-11.

#### a. Claim 1

Claim 1 alleges that Defendants violated Plaintiff's Eighth Amendment rights when they deprived him of narcotic pain medication in September 2014. ECF 94 at 21:535-22:580. Plaintiff filed numerous grievances related to a reduction in his pain medication in September 2014, but did not complete the three-step process on any such grievance before bringing this claim on October 27, 2014. ECF 2 at 4; ECF 151 ¶¶ 13, 19, 21, 22, 27, 30, 34, 37. Defendant Eynon, the grievance coordinator, also returned several of these grievances either because Plaintiff had already filed two grievances that week or six grievances that month in violation of OAR 291-109-0180(1); ECF 151 ¶¶ 21-22, or because Plaintiff had already filed a grievance or discrimination complaint regarding that incident or issue in violation of OAR 291-006-0015(3)-(4); OAR 291-109-0140(5)-(6); ECF 151 ¶¶ 30, 34, 37. Plaintiff could have, but did not, refile these grievances or pursue his original grievance on the issue. Thus, Plaintiff failed to exhaust

his administrative remedies on Claim 1.[5]

### b.  Claim 2

Claim 2 alleges that Defendant Lytle violated Plaintiff's Eighth Amendment rights by failing to protect Plaintiff from assault by another inmate on September 8, 2014. ECF 94 at 22:581-23:593. Plaintiff did not initiate a grievance about Lytle's alleged failure to protect him. ECF 151 ¶ 74. Thus, Plaintiff failed to exhaust his administrative remedies on Claim 2.

### c.  Claim 3

Claim 3 alleges that Defendants Frazier and Vanderkooy violated Plaintiff's Eighth Amendment rights when, on September 8, 2014, Plaintiff "was [d]rug down [t]hree hall ways to the [DSU] by his shoulder" following his altercation with the other inmate. ECF 94 at 23:594-613. Plaintiff did not initiate any grievances against Defendants Frazier or Vanderkooy. ECF 151 ¶ 74. Thus, Plaintiff failed to exhaust his administrative remedies on Claim 3.

### d.  Claims 5 and 7

The Court discusses Claims 5 and 7 together because they substantially overlap.[6] Claim 5 alleges, in part, that "all supervisors" violated Plaintiff's Eighth Amendment rights when they

---

[5] On September 5, 2014, Plaintiff filed a grievance, stating that he had been receiving narcotic pain medication while he was at Washington County Jail, had been at Washington County Jail until July 2014, and that "while at ODOC, most of my pain medication has been taken away." ECF 151-1 at 14. An inmate must file a grievance within 30 days of the date of incident giving rise to the grievance. OAR 291-109-0150(2). Plaintiff entered the custody of ODOC on July 14, 2014, and allegedly received a decrease in his dosage of medication at that time. ECF 2 at 4; ECF 151 ¶ 3. Because Plaintiff's grievance filed in September 2014 complained about an incident that occurred in July 2014, the grievance coordinator returned the grievance to Plaintiff. ECF 151-1 at 13. Plaintiff could have, but did not, refile his grievance in order to complain about the deprivation of his medication in September 2014.

[6] Claim 5 also alleges that Plaintiff was placed in the DSU without proper cause or due process. Because these allegations are duplicative of Claim 6, the Court assesses this portion of Claim 5 together with Claim 6.

denied him the assistance of his wheelchair or walker on September 8, 2014.[7] ECF 94 at 24:636-45. Plaintiff did not initiate any grievances regarding the September 8th denial of his wheelchair or walker. ECF 151 ¶ 74. Claim 7 alleges that Defendants Whelan, Jorgenson, Edison, Akana-Seawater, and Enriquez violated Plaintiff's Eighth Amendment rights by failing to provide Plaintiff with his walker or wheelchair while he was in the DSU from September 8 until October 2, 2014. ECF 94 at 26:673-99A. Plaintiff's lack of walker or wheelchair allegedly prevented him from showering and obtaining "fresh air" and required him to crawl around the floor. Plaintiff filed numerous grievances pertaining to conditions in the DSU. Because Plaintiff states this claim in his first Complaint filed on October 27, 2014, ECF 2 at 5, Plaintiff must have exhausted his administrative remedies before October 27, 2014.

On September 25, 2014, Plaintiff filed a grievance, stating that two officers prevented him from attending an appointment with the doctor on September 22, 2014, by denying him use of his walker or wheel chair. ECF 151-2 at 10. A staff member responded on September 29, 2014, stating that according to medical staff, "you do not require a walker or wheelchair." ECF 151-2 at 9. Plaintiff filed and then refiled an appeal, but the grievance coordinator returned both of these appeals to Plaintiff for expanding on the scope of the original grievance in violation of OAR 291-109-0170(1)(a)(A). ECF 151 ¶ 15; ECF 151-2 at 5-8. On October 24, 2014, the grievance coordinator stated that Plaintiff had 14 days to resubmit his appeal. ECF 151-2 at 5. Rather than file another appeal, Plaintiff filed suit on October 27, 2014.

Plaintiff filed four additional grievances relating to the denial of his wheelchair or a walker while in the DSU, but did not complete the three-step process on any of these grievances

---

[7] It is unclear whether Claim 5, which specifically names Defendants Myrick and Boman, treats Defendants Myrick and Boman as "all supervisors," or whether they are only two of the relevant supervisors.

before filing suit. ECF 151 ¶¶ 26-29, 31, 37. Moreover, the grievance coordinator properly returned these additional grievances because they all complained about the same issue as the first grievance, namely the denial of his walker or wheelchair. *See* OAR 291-109-0140(5); ECF 151 ¶¶ 28, 31, 37. Plaintiff also filed a discrimination complaint regarding the denial of his walker or wheelchair while in the DSU, but the grievance coordinator returned this complaint to Plaintiff because he had already filed a grievance concerning the issue. ECF 151 ¶ 30. Thus, Plaintiff failed to exhaust his administrative remedies on Claims 5 and 7.

### e.   Claim 8

Claim 8 alleges that Defendants violated Plaintiff's Eighth Amendment rights and denied him equal protection of the laws in violation of the Fourteenth Amendment by preventing him from showering, forcing him to remain in his cell, and "making him urinate down a drain" during the entirety of the 25-day period he spent in the DSU. ECF 94 at 27:700-21. Plaintiff never filed grievances complaining of being prevented from showering or leaving his cell, but he did file a grievance complaining of being denied a urinal. ECF 151 ¶¶ 20, 74. The grievance coordinator rejected this grievance because Plaintiff had already filed six grievances that month in violation of OAR 291-109-0180(1). ECF 151 ¶ 20. Plaintiff could have, but did not, refile this grievance the following month. Thus, Plaintiff failed to exhaust his administrative remedies on Claim 8.[8]

### f.   Claim 9

Claim 9 alleges that Defendants Whelan and Dieter violated Plaintiff's Fifth, Eighth, and Fourteenth Amendment rights by denying Plaintiff a walker between October 14 and 17, 2014. ECF 94 at 27:722-28:743. Plaintiff did not file a grievance against Defendants Whelan or Dieter

---

[8] Plaintiff also filed a grievance complaining that he could not sign up for sick call when he was in the DSU because no nurse came to his cell. ECF 151 ¶ 24. Plaintiff did not complete the three-step process on this grievance before bringing this claim on October 27, 2014. ECF 2 at 5; ECF 151 ¶ 25.

for depriving Plaintiff of his walker. ECF 151 ¶ 74. Plaintiff filed a grievance against Defendant Gruenwald, stating that she denied him a wheelchair and walker on October 15, 2014. ECF 151-3 at 5. The grievance coordinator returned the grievance to Plaintiff because it was duplicative of previous grievances in violation of OAR 291-109-0140(5) and requested review of multiple incidents in violation of OAR 291-109-0140(1)(d). ECF 151 ¶ 33. Plaintiff also filed two discrimination complaints, stating that Defendant "Gruenwald and staff" or "medical staff" deprived him of his walker and wheelchair, but the grievance coordinator returned these grievances because Plaintiff had already filed multiple grievances relating to the denial of his walker or wheelchair. ECF 151 ¶¶ 37-38; ECF 151-3 at 12-15. Plaintiff could have, but did not pursue his first grievance on the issue. Thus, Plaintiff failed to exhaust his administrative remedies on Claim 9.[9]

### g. Claim 10

Claim 10 alleges that Defendants' denied Plaintiff equal protection of the laws in violation of the Fourteenth Amendment by depriving Plaintiff of his wheelchair or walker while Plaintiff was housed in the DSU between September 8 and October 2, 2014. ECF 94 at 28:744-50. Claim 10 also alleges that Defendants Gruenwald and Norton denied Plaintiff equal protection of the laws by depriving him of narcotic pain medication and not authorizing surgery on Plaintiff's back. The Court has previously discussed Plaintiff's failure to exhaust his administrative remedies for his claims that Defendants deprived him of narcotic pain medication, a wheelchair, and a walker. Plaintiff's remaining grievances on these issues, filed after he brought suit, do not satisfy the exhaustion requirement. *See* ECF 151 ¶¶ 42-44. Thus, Plaintiff failed to exhaust his administrative remedies on Claim 10.

---

[9] Because the Court finds that Plaintiff has not exhausted his administrative remedies, the Court does not consider Defendants' alternative argument that Claim 9 fails as a matter of law.

### h. Claim 11

Claim 11 alleges various violations of Plaintiff's due process rights by Defendants Willis, Hunter, and Eynon. ECF 94 at 29:757-78. Plaintiff claims that Defendant Willis violated his due process rights by not transporting him to the disciplinary hearing on September 15, 2014. Plaintiff did not file any grievance specifically naming Defendant Willis, but instead filed two grievances stating that officers denied him use of a wheelchair or walker to attend the disciplinary hearing. ECF 151 ¶¶ 28, 31, 74; ECF 151-2 at 32; ECF 151-3 at 3. The grievance coordinator returned the grievance to Plaintiff because he had already filed a grievance concerning the denial of a wheelchair or walker. *See* OAR 291-109-1040(5); ECF 151 ¶¶ 28, 31; ECF 151-2 at 31; ECF 151-3 at 2. Plaintiff could have, but did not, pursue his first grievance on the issue.

Plaintiff also claims that Defendants Hunter and Eynon violated his due process rights by not allowing him to attend Admission & Orientation (A&O) until October 17, 2014. Plaintiff did not file a grievance concerning this conduct. ECF 151 ¶ 74. Thus, Plaintiff failed to exhaust his administrative remedies on Claim 11.[10]

### 3. Whether Administrative Remedies Were Effectively Unavailable

Plaintiff argues that his failure to exhaust his administrative remedies should be excused because ODOC's grievance process was effectively unavailable to him. First, Plaintiff asserts that he was unaware of the grievance process until he attended A&O at TRCI on October 17,

---

[10] Claim 11 also alleges that Defendant Myrick violated Plaintiff's due process rights at the disciplinary hearing by failing to review surveillance footage of Plaintiff's September 8th altercation with another inmate. Because these allegations are duplicative of Claims 4 and 6, the Court assesses this portion of Claim 11 together with Claims 4 and 6.

2014, and received information on the grievance process.[11] *See Bryant v. Sacramento Cty.*

*Jail*, 2008 WL 410608, at \*4 (E.D. Cal. Feb. 12, 2008) (holding that administrative remedies

were unavailable to a plaintiff when there was "no evidence submitted that plaintiff ever

received, saw or otherwise was notified of this jail's grievance procedure"); ECF 240 ¶¶ 6, 7, 15;

ECF 240-1 at 1. Plaintiff's argument is unavailing because it is undisputed that Plaintiff filed

multiple grievances at CCIC, ECF 251 at 8-9, including one on July 16, 2014, in which he

complained that his pain medications had been "taken away." ECF 251 at 9. Moreover, Plaintiff

concedes that he filed grievances as early as 2010, 2011, and 2012. ECF 265 at 7; ECF 265-1

at 7. Thus, the Court finds that Plaintiff was aware of the ODOC grievance process.

Second, Plaintiff argues that even if he was aware of the existence of the grievance

process, he did not understand how to participate in that process. Plaintiff argues that he did not

know how properly to file grievances until he first obtained a copy of the relevant OARs. There

is a factual dispute as whether that occurred in September or October 2014.[12] Whether or not

Plaintiff received the OARs in September or October 2014, however, it is undisputed that

Plaintiff was in contact with the law library as early as July 18, 2014. ECF 248 at 2 ¶ 4. Thus,

Plaintiff had the resources at his disposal with which to navigate the grievance process. *See Hall*

---

[11] Defendants argue that Plaintiff attended A&O at TRCI on October 8, 2014, not October 17, 2014. *See* ECF 250 ¶ 6. Whether Plaintiff attended A&O at TRCI on October 8 or 17, 2014, ODOC records indicate that Plaintiff attended A&O at CCIC on July 16, 2014, ECF 249 ¶ 4, Plaintiff's "uncorroborated and self-serving" allegations to the contrary notwithstanding. *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996); ECF 240-1 at 49; ECF 265-1.

[12] Plaintiff asserts that he first obtained a copy of the OARs from the TRCI library on October 31, 2014. ECF 240 ¶ 6. Defendants dispute Plaintiff's assertion, pointing to evidence that a legal assistant responded to Plaintiff's request for the OARs on September 19, 2014, and stated that the OARs had been "checked out for two weeks." ECF 250 at 6. Defendants, however, do not offer evidence that Plaintiff actually received a copy of the OARs on September 19, 2014.

*v. Sheahan*, 2001 WL 111019, at *2 (N.D. Ill. Feb. 2, 2011) ("[A]s long as the institution has made a reasonable, good-faith effort to make a grievance procedure available to inmates; an inmate may not close his eyes to what he reasonably should have known."). Moreover, the Court does not find that ODOC's grievance process is so complex as to be "'unknowable'—so that no ordinary prisoner can make sense of what it demands." *Ross v. Blake*, --- U.S. ---, 136 S. Ct. 1850, 1859 (2016) (quoting *Goebert v. Lee Cty.*, 510 F.3d 1312, 1323 (11th Cir. 2007)).[13]

Third, Plaintiff argues that TRCI staff intimidated and prevented him from filing grievances. *Ross*, 136 S. Ct. at 1860 (holding that administrative remedies are unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation"). The Ninth Circuit has adopted the Eleventh Circuit's test for evaluating intimidation, which holds that a staff member's threat renders the grievance process unavailable when the plaintiff establishes that:

> (1) the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust.

*Turner v. Burnside*, 541 F.3d 1077, 1085 (11th Cir. 2008); *see McBride v. Lopez*, 807 F.3d 982, 988 (9th Cir. 2015) (adopting the *Turner* test).

The Court finds that Plaintiff does not make the requisite showing under *Turner*. Plaintiff asserts that Defendant Eynon rejected Plaintiff's grievances "for prejudice reasons" and "would not follow the institution rules," leaving "[him] no remedy available." ECF 240 ¶ 8. Plaintiff also states that Defendant Eynon, the grievance coordinator, went to Plaintiff's cell in October 2014 and told Plaintiff that he "could not file discrimination complaints and/or grievances together."

---

[13] Plaintiff also argues that staff members did nothing to assist him in navigating the grievance process. As discussed, the record is undisputed that Plaintiff had access to and made use of the law library.

ECF 240 ¶ 9. Plaintiff further points to an email dated October 16, 2014, in which Defendant Eynon states that Plaintiff "sends me bunches—I met with him and most of his issues are medical (we get tons of those)—guess I will see if I had any impact on him." ECF 240-1 at 16.

It is undisputed that Defendant Eynon rejected the vast majority of Plaintiff's grievances because Plaintiff had already brought his grievances in this lawsuit in violation of OAR 291-109-0140(3)(h), not for "prejudice reasons." *See* ECF 151 ¶¶ 13, 19, 25, 27, 41, 45, 47-49, 51, 59, 62, 64, 67, 72. Moreover, Plaintiff filed numerous, often duplicative grievances during the months of September and October 2014 and continued to file grievances for months thereafter. *See generally* ECF 151. Thus, Defendant Eynon did not "actually . . . deter [Plaintiff] from lodging a grievance." *Turner*, 541 F.3d at 1085.

Plaintiff also states that after he complained in September 2014, two officers denied him his walker or wheelchair, Defendant Akana-Seawater "came down to my cell, not to help me but to intimidate me, and tell me not to file grievances . . . ." ECF 240 ¶ 10. Plaintiff filed a grievance regarding this incident. ECF 151 ¶¶ 14-18. Thus, Defendant Akana-Seawater's conduct, even if true, does not constitute intimidation under *Turner*.[14]

In conclusion, the Court holds that Plaintiff has failed to exhaust available administrative remedies on Claims 1-3, 5, and 7-11. The Court dismisses these claims without prejudice.

---

[14] Additionally, Plaintiff argues that the grievance process was unavailable because it was in "disarray." Plaintiff points to evidence that Defendant Eynon became grievance coordinator at TRCI only one month before Plaintiff entered TRCI, ECF 239 at 4, and sent an email concerning inmate grievances, including Plaintiff's, with the subject line "Help me please." ECF 240-1 at 15-16. This argument is unavailing because it is undisputed that Defendant Eynon responded to every grievance that Plaintiff filed. *See generally* ECF 151.

**B. Plaintiff's Remaining Claims**

**1. Claim 4**

Claim 4 alleges that Defendants Deacon and Myrick violated Plaintiff's Eighth

Amendment rights by imposing on Plaintiff a sanction of 25-days in the DSU and 14-days loss of

privileges for Plaintiff's altercation with another inmate on September 8, 2014. ECF 94

at 23:614-24:635. The Court construes Claim 4 as also alleging a violation of Plaintiff's

Fourteenth Amendment Procedural Due Process rights when it alleges that Defendants Deacon

and Myrick improperly sanctioned Plaintiff because Plaintiff "never even touched his attacker."

In apparently concluding to the contrary, Defendants Deacon and Myrick allegedly relied

improperly on the written testimony of an officer who did not have a clear view of the

altercation, never took the testimony of an officer who was four-feet away from the altercation,

and did not review surveillance video of the altercation, claiming, incorrectly, that no such video

exists.

In his SAC, Plaintiff also alleges that officers, including Defendant Willis, denied

Plaintiff the opportunity to be present at the hearing by not providing him with a wheelchair or

walker to attend the hearing. ECF 94 at 5:131. The Court has already found that Plaintiff has not

exhausted the available administrative remedies on this claim. *See supra* Sections A.2.d, g, h

(analysis of Claims 5, 7, 10, and 11). Thus, the Court dismisses this portion of Claim 4 without

prejudice.

**a. Procedural Due Process**

Defendants argue that they did not violate Plaintiff's due process rights because there is

some evidence to support ODOC's conclusion that Plaintiff and the other inmate were engaged

in a mutual fight. The minimum requirements of procedural due process in a prison disciplinary

hearing are satisfied when "there was some evidence from which the conclusion of the

administrative tribunal could be deduced." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985). This standard has been met.

According to his written statement, Officer Kester was in the "unit 6 control point" on September 8, 2014, when he saw Plaintiff and another inmate "standing in the dayroom near the control point." ECF 159 at 9. Officer Kester continues:

> I then saw [the other inmate] hit Inmate Heilburn [sic] with a closed fist punch in the head. Officer Vanderkooy was the first to respond. He approached [the other inmate] and Inmate Heilburn [sic] with his spray pulled out and yelled at them to stop fighting multiple times. [The other inmate] stopped fighting and placed his hands against the wall.

ECF 159 at 9. Defendant Vanderkooy completed a misconduct report, which states that he "saw inmate Heilburn . . . exchanging strikes with [the other inmate]. These strikes were closed first strikes to the face and head." ECF 159 at 8. Defendant Vanderkooy charged Plaintiff with Inmate Assault I and Disrespect I. ECF 159 at 8.

On September 15, 2014, Defendant Deacon held a disciplinary hearing. Defendant Deacon found that the evidence did not support the charge of Inmate Assault I, but found that the lesser charge of Assault II was warranted. ECF 159 at 4. Assault II requires a finding that the inmate "[i]s involved in a mutual fight in a location or under circumstances which creates a threat to the safety, security, or orderly operation of the facility, such as a dining hall or recreation area." OAR 291-105-0015(2)(d)(C). Defendant Deacon also found that the evidence supported the charge of Disrespect I, which is warranted when an inmate "directs hostile, sexual, abusive or threatening language or gestures, verbal or written, towards or about another person that involves . . . physical threat to the other person." OAR 291-105-0015(2)(f); ECF 159 at 5.

Plaintiff argues that Defendants ignored the video surveillance footage of the altercation. Defendants concede that they did not view the surveillance video in the disciplinary hearing,

ECF 158 at 4, but have filed it with the Court. ECF 159 at 14. The Court has reviewed the surveillance video. When viewed in the light most favorable to Plaintiff, the other inmate appears more aggressive than Plaintiff and throws the first punch, but the surveillance video also clearly shows Plaintiff throwing at least one punch. Moreover, the video shows Plaintiff in a large open space resembling a dining hall where several other inmates are present. Thus, in addition to the statements of two eyewitness officers, the surveillance video provides additional evidence that Plaintiff was involved in a "mutual fight in a location or under circumstances which creates a threat to the safety, security, or orderly operation of the facility, such as a dining hall or recreation area." OAR 291-105-0015(2)(d)(C). Thus, the Court finds that "there was some evidence from which the conclusion of the administrative tribunal could be deduced."[15] *Hill*, 472 U.S. at 455. The Court grants summary judgment for Defendants against this claim.

### b. Eighth Amendment

In order to establish an Eighth Amendment violation based on prison conditions, an inmate must make both "an objective showing that the deprivation was 'sufficiently serious' to form the basis for an Eighth Amendment violation" and "a subjective showing that the prison official acted 'with a sufficiently culpable state of mind.'" *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities,' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson*, 501 U.S. at 298 (internal citation omitted) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Even if Plaintiff's sentence of 25 days in the DSU and 14 days loss of privileges were "sufficiently serious" to form the basis

---

[15] The fact that one witness may have had a different interpretation of the altercation does not defeat the conclusion that there was "some evidence" to support Defendant Deacon's findings in the disciplinary hearing. *See* ECF 267-1 at 28-29.

of an Eighth Amendment violation, *see Thomas v. Ramos*, 130 F.3d 754, 763-65 (7th Cir. 1997) (finding that an inmate's housing in segregation for 70 days did not violate the Eighth Amendment), Plaintiff offers no evidence that any prison officials acted with a culpable state of mind. The undisputed evidence in the record is that Defendant Deacon's "recommended sanction was based solely on Inmate Heilbrun's conduct during the September 8, 2014 assault." ECF 159 at 3 ¶ 12. Moreover, Plaintiff's sanction fell in the middle of ODOC's recommended range of 20-30 days in the DSU for his offenses. ECF 160 at 28 (describing sanction for Inmate Assault II). Thus, the Court grants summary judgment for Defendants against this claim.

### 2. Claim 6

Claim 6 alleges three acts by Defendants. ECF 94 at 25:646-72. First, Defendant Myrick was allegedly in possession of the surveillance video of Plaintiff's altercation with another inmate, but concealed that video from Defendant Deacon, who conducted the disciplinary hearing. Second, Defendant Deacon is liable for allegedly showing the video to Defendant Boman, who, as a result of viewing the video, denied Plaintiff his wheelchair and walker to travel to the disciplinary hearing. Third, Defendants Archer and Boman allegedly could have "stepped in" or "interceded" in order to provide Plaintiff with his walker or wheelchair to attend the disciplinary hearing, but did not. To the extent that this claim is not duplicative of Plaintiff's unexhausted claims, there is no evidence in the record that: (1) Defendant Myrick concealed the surveillance video from Defendant Deacon; (2) Defendant Deacon showed the surveillance video to Defendant Boman; or (3) Defendants Archer and Boman could have "stepped in" or "interceded." Moreover, there is no evidence that any of these alleged "supervisors" had the requisite personal involvement in their subordinates' allegedly unconstitutional actions to be personally liable to Plaintiff. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A supervisor is only liable for constitutional violations of his subordinates if the supervisor

participated in or directed the violations, or knew of the violations and failed to act to prevent them."). Thus, the Court grants summary judgment for Defendants against Claim 6.

### 3. Claim 12

Claim 12 alleges that Plaintiff's denial of narcotic pain medication, his placement in the DSU, his denial of a wheelchair or walker, the alleged concealment of the surveillance video of his altercation with another inmate, and other previously discussed actions allegedly taken by Defendants were all in retaliation against Plaintiff for filing grievances, filing a Notice of Tort, and calling the Inspector General's and the Governor's Offices. ECF 94 at 29:779-30:802. To the extent that this claim is not duplicative of Plaintiff's unexhausted claims, the record contains no evidence that Plaintiff's exercise of his First Amendment rights caused Defendants to take these alleged actions. *See Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) ("[T]he plaintiff must allege a causal connection between the adverse action and the protected conduct."). Thus, the Court grants summary judgment for Defendants against Claim 12.

### 4. Claim 13

Claim 13 alleges that the denial of Plaintiff's walker and wheelchair and associated injuries that Plaintiff allegedly suffered in the DSU caused him severe emotional distress. ECF 94 at 30:803-31:837B. To the extent this claim alleges an Eighth Amendment violation, Plaintiff failed to exhaust the available administrative remedies on this claim. *See supra* Sections A.2.d, e, g (analysis of Claims 5, 7, 8, and 10). To the extent that Plaintiff states a claim for common law intentional infliction of emotional distress, Defendants, all TRCI staff members, argue that the Court must "substitute [ODOC] as the defendant" because Defendants were all "acting within the scope of their employment or duties."[16] Or. Rev. Stat. § 30.265(3). The Court

---

[16] Plaintiff offers no argument or evidence to the contrary.

agrees with Defendants. Because the State of Oregon has not consented to suit in federal court, *Simmons v. Or. Dep't of Corrs.*, 2014 WL 4220784, No. 2:11-cv-1500-SI, at *2 (D. Or. Aug. 25, 2014); *Jensen v. Whitlow*, 334 Or. 412, 416-17 (2002) (en banc), Plaintiff's intentional infliction of emotional distress claim against ODOC is barred by the State of Oregon's Eleventh Amendment immunity. *See Alabama v. Pugh*, 438 U.S. 781, 782 (1978). Thus, the Court dismisses this claim without prejudice.

### 5. Claim 14

Claim 14 alleges that ODOC is liable to Plaintiff under a municipal liability theory because several of its official policies caused Plaintiff to be subjected to the denial of his constitutional rights. ECF 94 at 32-35. Because the Court has dismissed Defendant ODOC pursuant to Plaintiff's voluntary dismissal (ECF 234, 236) and there are no remaining entity defendants, the Court dismisses this claim.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## CONCLUSION

Defendants' motions for summary judgment (ECF 150, 158) are GRANTED in part, and Plaintiff's cross-motions for summary judgment (ECF 267, ECF 274) are DENIED. Plaintiff's Claims 1-13 (ECF 94 at 21-31) are DISMISSED without prejudice for failure to exhaust available administrative remedies. Claim 14 (ECF 94 at 32-35) is DISMISSED. To the extent that Claims 4 (ECF 94 at 23-24), 6 (ECF 94 at 25), and 12 (ECF 94 at 29-30) are not duplicative of Plaintiff's unexhausted claims, the Court GRANTS judgment for Defendants against these claims. The Court further finds that any appeal from this Opinion and Order would not be taken in good faith and Plaintiff's in forma pauperis status should be revoked pursuant to 28 U.S.C. § 1915(a)(3).

**IT IS SO ORDERED**.

DATED this 5th day of June, 2017.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge